UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

SHIRLEY PETWAY, parent of          )
minor Plaintiffs J.P. and K.P.,    )
                                   )
            Plaintiff,             )
                                   )        Civil Action No. 03-1673 (AK)
      v.                           )        Civil Action No. 03-1674 (AK)
                                   )
DISTRICT OF COLUMBIA, *et al.*,    )
                                   )
            Defendants.            )
_____

## **MEMORANDUM OPINION**

Pending before the Court is Plaintiff Shirley Petway's Motion for Summary Judgment ("Plaintiff's First Motion") regarding her daughter, "J.P.," a minor whose educational placement is at issue [13], Defendants' Opposition to Plaintiff's First Motion ("Defendants' First Opposition") [15], Plaintiff's Reply to Defendants' First Opposition ("Plaintiff's First Reply") [20]; and Defendants' Motion for Summary Judgment ("Defendants' First Motion") [14], Plaintiff's Opposition to Defendants' First Motion ("Plaintiff's First Opposition") [19], and Defendants' Reply to Plaintiff's First Opposition ("Defendants' First Reply") [21].

Also pending before this Court is Plaintiff Shirley Petway's Motion for Summary Judgment ("Plaintiff's Second Motion") regarding her daughter "K.P.," another minor whose educational placement is at issue [25], Defendants' Opposition to Plaintiff's Second Motion ("Defendants' Second Opposition") [30], and Plaintiff's Reply thereto ("Plaintiff's Second Reply") [31]; as well as Defendants' Second Motion for Summary Judgment ("Defendants' Second Motion") [23], Plaintiff's Opposition thereto ("Plaintiff's Second Opposition") [26], and

Defendants' Reply ("Defendants' Second Reply") [28].[1]

In both cases, Plaintiff moves to overturn the Administrative Hearing Officer's Determinations ("J.P.'s HOD" and "K.P.'s HOD"), both issued on July 2, 2003, pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1415(f). In J.P.'s HOD, the Hearing Officer denied Plaintiff's request for evaluations; an Individualized Education Program ("IEP"); placement at a private special education school, the Center for Life Enrichment ("CLE"); and reimbursement for CLE tuition retroactively dated back to April 13, 2003. (J.P.'s Certified Administrative Record ("J.P.'s Record") at 2.) Regarding K.P.'s HOD, the Hearing Officer concluded that because of the inconsistency in student scores and performance, "DCPS shall conduct a psycho-educational evaluation, a clinical evaluation, and a Vineland Assessment, and convene a multidisciplinary team ("MDT") meeting at Backus Middle School by August 22nd 2003 to review the evaluations and develop an appropriate IEP and determine placement." (K.P.'s Certified Administrative Record ("K.P.'s Record") at 4.) There is no evidence that these evaluations have been performed or that a MDT meeting was convened or an IEP developed. The Hearing Officer also denied the Plaintiff's request for reimbursement for educational placement of K.P.

Upon consideration of the Defendants' First and Second Motions, the Plaintiff's First and Second Motions, the memorandum in support thereof, and the Administrative Records in this matter, for the reasons set forth below, the Defendants' First and Second Motions are denied and the Plaintiff's First and Second Motions are granted.

---

[1]The parties initially consented to these cases being referred to magistrate judges for all purposes and trial, and they later consented to both cases being handled by the undersigned. *See* February 22, 2005 Order by Magistrate Judge Alan Kay.

### I. Statutory Framework

Congress passed the IDEA to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. §1400(d)(1)(A).  In order to receive funding under the IDEA, states must ensure that "[a]ll children with disabilities residing in the State, including children with disabilities attending private schools, regardless of the severity of their disability, and who are in need of special education and related services, are identified, located, and evaluated." 34 C.F.R. § 300.125(a)(1)(i).  The primary vehicle for ensuring that students with disabilities receive free appropriate public education ("FAPE") is through the creation and implementation of an individualized education program ("IEP") setting forth the educational services to be provided to meet that student's needs.  20 U.S.C. §§1414(d)(1)(A)-(d)(2)(A); *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 368 (1985) (describing the IEP as the *modus operandi* of the IDEA).  The student's parents, teachers, school officials and other professionals may be involved in the development of the IEP and recommendation of placement. 20 U.S.C. §1414(d)(1)(B).  The IDEA requires the school district to annually review and revise the student's IEP as a full evaluation of a disabled child is an integral part of developing an appropriate IEP.  20 U.S.C.§§1414(d)(4)(A)(i)-(ii).  If appropriate educational services cannot be provided by the school district, the IDEA requires that the student be placed in a private school at public expense.  20 U.S.C. §1413(a)(4).

Parents who disagree with their child's evaluation or placement may request an administrative hearing, before an impartial Hearing Officer, to challenge the IEP.  20 U.S.C. §1415(b)(2).  During the IDEA due process hearing, the school system "shall bear the burden of

proof, based solely upon the evidence and testimony presented at the hearing, that the action or

proposed placement is adequate to meet the educational needs of the student." 5 D.C. Mun.

Regs. §3022.16; *see also* 20 U.S.C. §§1401(a)(1), 1415(b)(2); *Argueta v. District of Columbia*,

355 F. Supp. 2d 408, 412 (D.D.C. 2005).  The Hearing Officer's Determination ("HOD") may be

challenged in a federal district court.  20 U.S.C. §1415(e)(2).

 If an HOD is challenged, parents may unilaterally place their child in a private school

during the pendency of the review proceedings, without consent of the local school officials, but

they "do so at their own financial risk."  *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S.

359, 374 (1985) (reasoning that "[a] final judicial decision on the merits of an IEP will in most

instances come a year or more after the school term covered by that IEP has passed"); *see also*

*Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993).  Parents may receive tuition

reimbursement if a court finds that: (1) "the public placement violated the IDEA" and (2) "the

private school placement was proper under the Act."  *Schoenbach v. District of Columbia*, 309 F.

Supp. 2d 71, 77 (D.D.C. 2004); *see Burlington* 471 U.S. at 369-70.

## II. Background
### 1. J.P.

 J.P., born on July 16, 1989, was enrolled in the seventh grade at Backus Middle School

("Backus") in Washington, D.C. during the time that the incidents underlying this lawsuit

occurred.  (*See* J.P.'s Record at 61.)  J.P. is a disabled child and her most recent IEP, created for

the 2002-2003 school year, identified her as a learning disabled student with an IQ last tested at

71, the third percentile.  (J.P.'s Record at 21, 30.)  At that time, J.P. was working at a

kindergarten level in math and reading, but was placed in seventh grade at Backus solely because

-4-

of her age.  (J.P.'s Record at 31, 36.)   J.P.'s 2002-2003 IEP called for her to be in a regular education classroom for approximately 80 percent of the day, but according to her teachers she "was just occupying time and space."  ( J.P.'s Record at 30; Administrative Hearing Transcript ("J.P.'s Tr.") at 22.)  According to uncontested testimony from the Plaintiff, the teachers and staff at Backus stated that J.P. did not belong at the middle school and that another placement would be more appropriate.  (J.P.'s Tr. at 17-19.)  During the 2002-2003 school year, J.P. was suspended for at least twenty-five days due to behavioral problems; Plaintiff offered unrebutted testimony that the special education coordinator at Backus stated that J.P.'s improper placement was one of the things that "precipitated all of the behavioral problems."  (J.P.'s Tr. at 17-18, 23.)  J.P.'s educational advocate, Sharon Millis, who observed J.P. at Backus on two occasions during the 2002-2003 school year and had extensive discussions with the special education coordinator Crystal Johnson, testified that she was extremely concerned with J.P.'s placement and that she attempted meet with the school to formulate a new IEP.  (J.P.'s Tr. at 18-19.)

On April 3, 2003, Plaintiff's attorney notified the District of Columbia Public Schools ("DCPS") that it had failed to provide an appropriate school placement for the student, that Plaintiff intended to place J.P. in a private school, and expected DCPS to fund the placement "until such time as DCPS provides an appropriate placement."  (J.P.'s Record at 37.)  Plaintiff subsequently enrolled J.P. at the Center for Life Enrichment ("CLE"), a specialized school for students who cannot be mainstreamed or handled through accommodations in the DCPS, on April 13, 2003.  (J.P.'s Tr. at 41, 43.)  At CLE, J.P. is in a class of eight students and receives individualized reading three times a week.  (J.P.'s Tr. at 42-43.)  Since attending CLE, J.P. has improved both academically and behaviorally.  (J.P.'s Tr. at 44.)

In the Complaint for Injunctive Relief, Plaintiff Shirley Petway seeks an injunction ordering Defendant District of Columbia to perform certain evaluations of her daughter, J.P.; develop an appropriate IEP based on those evaluations; and fund J.P.'s placement at the CLE, retroactively to April 13, 2003, for as long as such placement is appropriate.  (Complaint for Injunctive Relief ("Complaint") [1] at ¶1.)  Plaintiff asserts that DCPS failed to perform "triennial reevaluations of [J.P.'s] condition" and "annual reviews of [J.P.'s] IEP."  (Complaint at ¶¶8-9.)  Plaintiff states that there was "no IEP currently in place for [J.P.] for the 2003-2004 school year."  (*Id.* at ¶9.)  Plaintiff also alleges that the "IEPs that DCPS developed over the years were based on inadequate and outdated evaluations" and further "[t]he most recent IEP, developed in April 2002, was developed in a meeting attended by only three school representatives and no evaluators."  (*Id.* at ¶10.)  Plaintiff contests J.P.'s school placement resulting from the April 2002 IEP, stating that "Backus Middle School ("Backus") was inappropriate and unhealthy for [J.P.] " (*Id.* at ¶12.)

In his HOD, the Hearing Officer made several Findings of Fact regarding J.P.  He indicated that she was found eligible for special education services by DCPS, and her "April 19, 2002 IEP called for 10 hours of specialized instruction."  (J.P.'s Record at 4.)  He found that the student's parent indicated, in writing, her agreement with that IEP.  (*Id.*, citing DCPS-1.)[2]  The

---

[2]The exhibits are not marked on the copy of J.P.'s Administrative Record provided to the Court.  Pages 11-16 consist of a copy of an IEP, dated May 30, 2000, which is not signed by a parent or guardian of the minor Plaintiff.  That IEP provides for 15 hours of specialized instruction.  Attached at pages 25-28 is an IEP dated April 6, 2001, signed by Plaintiff Shirley Petway, providing 10 hours of specialized instruction for J.P.  Attached at pages 30-34 is a third IEP, dated April 19, 2002, providing for 10 hours of specialized instruction for J.P.

All three IEPs state that Plaintiff attends Noyes Elementary School ("Noyes").  Attached to the third IEP is a MultiDisciplinary Team (MDT) Notice dated April 19, 2002, notifying Angela Petway about the student's change in placement from Noyes to Backus Middle School.

Hearing Officer noted that because J.P.'s psychological evaluation indicated that there was a

"significant discrepancy between her cognitive ability and academic achievement," J.P. was

"qualified for a special education placement in a learning disabilities program."  (J.P.'s Record at

5.)  The Hearing Officer reviewed some of the student's scores relating to her April 2002

Stanford Nine test, and her March 3, 2003 Progress Report.[3]  He noted that "[p]rior to the

expiration of the student's 2002-2003 IEP, the MDT [Multi-Disciplinary Team] from Backus

M.S. [where Plaintiff was attending school] sent a Letter of Invitation ["Letter"] to the parent

listing 3 dates in March for an MDT meeting to develop an IEP."  (J.P.'s Record at 5, citing

DCPS-5.; J.P.'s Record at 67.)  That Letter suggests that the meeting would be held on March 12,

2003; March 17, 2003; or March 18, 2003. (*Id.*)  The HOD states that "[t]he parent did not

respond and the meeting did not take place."  (J.P.'s Record at 5.)[4]  The Hearing Officer proffers

no explanation as to why the meeting was not held, even though the Letter states that "[a]fter the

third attempt to contact the parent, the meeting will be held without further notice."  (J.P.'s

Record at 67.)  The Hearing Officer found that Plaintiff was not entitled to reimbursement

because "the [Plaintiff] unilaterally placed her child in a private placement" and the parent's

"preemptive action allowed no opportunity to discuss parental concerns about a new IEP and

---

[3]According to that Progress Report, J.P. was "borderline in literature for not turning in homework, failing in mathematics with the teacher noting she was tired too often."  (J.P.'s Record at 5.)  The HOD also states that "[t]he student had excessive absences and was tardy many times from September 2002 through March 2003 [and she was] suspended on March 26, 2003."  (*Id.*)

[4]There is no indication in the record that the parent received any additional notice about the MDT/IEP, with the exception of a Memorandum, dated April 4, 2003, sent by Plaintiff's attorney to the Principal at Backus Middle School.  That Memorandum states that the student's mother "received a certified letter on April 2, 2003 to come to an IEP meeting on April 3, 2003." (J.P.'s Record at 40.)

gave DCPS no opportunity to meet those concerns." (J.P.'s Record at 6.)

## 2. K.P.

K.P., born April 20, 1989, has had a very similar educational experience as her sister, J.P.

DCPS labeled K.P. as "learning disabled" in her most recent IEP, developed for the 2002-2003

school year, and reported that she had an IQ of 51, a score that is almost 20 points below what is

necessary to call a student mentally retarded. (K.P.'s Record at 120; Transcript of July 2, 2003

Administrative Hearing (" K.P.'s Tr.") at 8.) At the time that the incidents underlying this

lawsuit occurred, K.P attended Backus Middle School and was in a regular education classroom

with approximately 23 to 28 children for 50 percent of the day. (K.P.'s Tr. at 19-20.) K.P. was

placed in seventh grade only because of her size and her age, but "had less than the abilities of a

kindergarten child." ( K.P.'s Tr. at 19-22.) Ms. Millis, K.P.'s education advocate, testified that the

school work was "completely [] over [K.P.'s] head and the teachers really did not have time to

work with her on an individual basis." (K.P.'s Tr. at 20.) K.P. was transferred to CLE in April,

2003, and is currently in a classroom of seven students, all of whom have some type of learning

disability. (K.P.'s Tr. at 13.) At CLE, K.P. takes a 30-minute reading class every day and she is

provided with extensive one on one instruction. ( K.P.'s Tr. at 14.)

In the Complaint for Injunctive Relief ("K.P. Complaint"), at ¶1., K.P., through her

mother, seeks an injunction ordering the Defendant to fund her placement at the CLE

retroactively to April 13, 2003. Plaintiff contests Defendant's failure to perform annual reviews

of K.P.'s IEP [¶8] and alleges that K.P.'s placement at Backus was "inappropriate and unhealthy

for her." ( K.P.'s Complaint at ¶10.) Plaintiff claims that Defendant failed to provide a free

appropriate public education for K.P., and therefore violated the IDEA. (K.P.'s Complaint at

¶¶13-15.)  The Hearing Officer made several findings with regard to K.P. in an HOD following a

hearing on July 2, 2003 ("the Hearing").  The HOD stated that K.P. "has been found eligible for

special education services by DCPS as a student with a learning disability (LD)," and that her

"April 15, 2002 IEP called for 15 hours of specialized instruction, one hour a week of speech and

language therapy and one hour a week of psychological services."  (K.P.'s Record at 2.)

The Hearing Officer noted that the K.P's parent signed and consented to her IEP.  (*Id.*,

citing DCPS-1.)  The DCPS IEP for the 2002-2003 school year lapsed on April 15, 2003 and no

IEP was developed for the 2003-2004 school year.  (*Id.* at 3.)  A DCPS evaluator concluded that

K.P.'s general cognitive ability was "intellectually deficient" in September 2000, and K.P.

performed "Below Basic" in Reading and Mathematics on the Stanford Nine in April 2002;

however, her report card, dated February 14, 2003, showed grades of a B in Language Resource

with the comments "excellent behavior and excellent initiative," and a C in Math Resource.  (*Id.*,

citing DCPS-7.)   The Hearing Officer noted in his "Discussion and Conclusions of Law" that the

"stark contrasts" between K.P.'s test scores and her report card "make it difficult . . . to draw

conclusions on the student's specific disability and its adverse impact on her education."  (*Id.*)

The Hearing Officer ordered that DCPS conduct several evaluations of K.P. and convene

an MDT meeting at Backus Middle School by August 22, 2003, to develop an appropriate IEP,

but denied the parent's request for tuition reimbursement. (*Id.* at 4.)  The HOD denied

reimbursement because the parent unilaterally placed her child in a private placement and the

"parent's preemptive action allowed no opportunity to discuss parental concerns about a new IEP

and gave DCPS no opporutnity to meet those concerns."  (*Id.* at 4.)

### III. Legal Standard
### A. Summary Judgment

A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and affidavits demonstrate that there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Once a moving party files a proper summary judgment motion the burden shifts to the non-moving party to demonstrate that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Although a court should draw all reasonable inferences from the records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *See Anderson*, 477 U.S. at 248. The adverse party's pleading must demonstrate the existence of a genuine issue of material fact. *See id.* To be genuine, the issue must be supported by sufficiently admissible evidence such that a reasonable trier of fact could find for the nonmoving party. *See id.* In determining materiality, the factual assertion must be capable of affecting the substantive outcome of the litigation. *See id.*; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

### B. Discretion to be accorded to the HOD

The IDEA provides for judicial review in state or federal court for "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing. 20 U.S.C. §1415(i)(2)(A). Pursuant to the IDEA, "the court [ ] shall receive the records of the administrative proceedings; [ ] shall hear additional evidence at the request of a party; and [ ] basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20

U.S.C. §1415(i)(2)(B).  When neither party requests that the court hear additional evidence, their "motion[s] for summary judgment [are] simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record."  *Heather S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997) (citations omitted).

The party challenging the Hearing Officer's determination bears the burden of persuading the court that the Hearing Officer's decision was incorrect.  *Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (citing *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1989)).  The court employs a "preponderance of the evidence" standard in performing such judicial review.  20 U.S.C. §1415(i)(2)(B)(iii); *see also Arguenta v. District of Columbia*, 355 F. Supp. 2d 408, 412 (D.D.C. 2005); *Lenn v. Portland School Committee*, 998 F.2d 1083 (1st Cir. 1993) .  The court should not "reverse the hearing officer's findings simply because [the court] disagree[s] with them."  *Bd. of Educ. of Arlington Heights Sch. District No. 25 v. Illinois State Bd. of Educ.*, 2001 U.S. Dist. LEXIS 6994, *12 (N.D.Ill. March 19, 2001); *see also Schoenbach v. District of Columbia*, 309 F. Supp. 2d 71, 74 (D.D.C. 2004) .  The court may make an independent determination but "it must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education."  *Lyons v. Smith*, 829 F. Supp. 414, 418 (D.D.C. 1993); *see also Bd. of Educ. of Hudson Central Sch. District v. Rowley*, 458 U.S. 176, 206-07 (1982).

**IV. Analysis**
**A. Public School Placement**

A court may award tuition reimbursement if it finds that the public school placement violated the IDEA and that the private school placement was proper under the Act. *See Florence County Sch. District Four v. Carter*, 510 U.S. 7, 15 (1993). The threshold question is whether the public school placement was appropriate. *See id.* If it is determined to be appropriate, the court need go no further in its inquiry before denying the parents' request for tuition reimbursement. 20 U.S.C. §1412(a)(10)(C)(I) (indicating that the IDEA "does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made [FAPE] available to the child and parents elected to place the child in such private school or facility"). In *Rowley*, 458 U.S. 176, 206 (1982), the Supreme Court explained the meaning of "appropriate" education under the Act, stating that there is "no additional requirement that the services so provided be sufficient to maximize each child's potential commensurate with the opportunity provided to other children." The Court noted that if a public school placement is appropriate, a school district need not consider private placement, even if private placement might be more appropriate. *Id.*; *see also Schoenbach*, 309 F. Supp. 2d at 80. Under *Rowley*, academic progress is a strong, though not probative, indication that the IEP is providing an educational benefit in accordance with the IDEA. *Id.* _____

This threshold question of whether the public school placement was appropriate turns on two sub-issues: (1) whether DCPS complied with IDEA's procedural requirements[5] and (2)

_____

[5]Plaintiff does not challenge the procedural adequacy of the Due Process Hearings for J.P. and K.P.

whether the IEPs for J.P. and K.P. were reasonably calculated to provide an educational benefit

to the children.  *See Rowley*, 458 U.S. at 207; *Schoenbach v. District of Columbia*, 309 F. Supp.

2d 71, 78 (D.D.C. 2004).  Based on the Record before the Court, it is clear that the education

provided at Backus was not appropriate for both J.P. and K.P.

### 1. J.P.

In J.P.'s HOD, the Hearing Officer outlined for consideration the following issues:

1. Did the District of Columbia Public School system ("DCPS") fail to properly evaluate

the student?; 2. Did DCPS fail to develop an appropriate Individualized Educational Program

("IEP")?; 3. Did DCPS fail to provide an appropriate placement?; 4. Did DCPS fail to perform

triennial reevaluations?; and 5. Is the parent entitled to reimbursement for the unilateral

placement of J.P. at an alternative educational institution, The Center for Life Enrichment?  (*See*

J.P.'s Record at 2.)

Notably, J.P.'s HOD contains no discussion or conclusions of law relating to the first four

issues, other than noting that "DCPS had invited the parent to an IEP meeting with three dates in

March [2004], but the parent did not respond and no MDT [Multi Disciplinary Team] meeting

was held and no IEP developed." (*Id.* at 4.)  Despite his failure to analyze several of the issues in

this case, the Hearing Officer concluded that J.P. was not entitled to reimbursement for the cost

of enrolling at a  private school.  This conclusion was based upon his statement that unilateral

placement "allowed no opportunity [for the parties] to discuss parental concerns about a new IEP

and gave the District of Columbia Public Schools ("DCPS") no opportunity to meet those

concerns."  (J.P.'s Record at 5-6.)  No further explanation was offered by the Hearing Officer.

Plaintiff asserts that Defendants failed to carry their burden of proof during the Due

Process Hearing with regard to J.P. and furthermore, that the Hearing Officer in this case made "no finding that the public school was appropriate, and no finding that the private school was not a proper placement."  (Plaintiff's First Opp'n at 6.)  Defendants do not proffer any factual support for the Hearing Officer's conclusion, except stating that the denial of reimbursement is "supported by the facts, most notably the parent's letter, her unilateral move of the child, and the failure of the parent to respond to a request by DCPS for an August 22, 2003 MDT/IEP meeting;" nor do Defendants discuss the fact that the HOD only addressed one of the five issues highlighted for consideration by the Hearing Officer.  (Defendants' First Reply at 12.)

While the Court must give "due weight" to the Hearing Officer's decision, a decision without reasoned and specific conclusions deserves little deference.  *See Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005); *Lyons v. Smith*, 829 F. Supp. 414, 418 (D.D.C. 1993).  Defendants clearly did not meet their original burden of demonstrating that the educational placement at Backus was appropriate.  They offered no testimony and made no argument during the Hearing that Backus was an appropriate placement other than pointing to achievement scores predating J.P.'s attendance at Backus. (J.P.'s Tr. at 12-13.)

Furthermore, the Record overwhelmingly supports the conclusion that Backus was not an appropriate placement for J.P.  For example, at the Hearing, Sharon Millis, the educational advocate for J.P. testified that J.P. was working at a kindergarten level but was in a seventh grade classroom at Backus; that the special education coordinator at Backus stated that J.P. was "just occupying time and space" and that Backus was not "going to be able to meet her needs," J.P.'s Tr. at 18-23; and that  J.P. was reported to be eligible for special education as a mildly retarded student in 1998, but had only been receiving education in the part-time program for learning

disabled students, J.P.'s Tr. at 29.  Additionally, J.P.'s 2002-2003 IEP was not being implemented.  Ms. Millis testified that J.P. was not receiving any tutoring at Backus in reading and math in accordance with her IEP.  (J.P.'s Tr. at 23.)  J.P.'s last IEP indicated she was attending  Noyes Elementary school, however, J.P. was moved to seventh grade at Backus Middle School because of her size and age, notwithstanding she was functioning at a kindergarten level.  (J.P.'s Record at 61; J.P.'s Tr. at 24.)

The Court cannot ignore the fact that J.P.'s 2002-2003 IEP was not being implemented and when coupled with the fact that DCPS at the Hearing did not offer any testimony to establish that Backus was an appropriate placement for J.P. leads the Court ineluctably to find that J.P.'s placement at Backus was not "reasonably calculated to provide [her] an educational benefit." *See Rowley*, 458 U.S. at 207.  At a minimum, the IDEA requires the school system to provide the student with the educational setting called for under her IEP.  *Argueta v. District of Columbia*, 355 F. Supp. 2d 408, 414 (D.D.C. 2005) (citing *Honig v. Doe*, 484 U.S. 305, 311).  "The Act requires that a child who needs additional education in a school system be given the attention [she] needs throughout the duration of [her] IEP, not only in its evaluation and planning stages." *Id.*  Furthermore, Ms. Millis provided uncontested testimony that the special education coordinator at Backus did not feel that Backus "was going to be able to meet [J.P.'s] needs." (J.P.'s Tr. at 18.)  J.P. was working at a kindergarten level, but was placed in a seventh grade classroom for eighty percent of the day and according to Ms. Millis's undisputed testimony, was "just occupying time and space."  (J.P.'s Tr. at 18-23.)

## 2. K.P.

The Record also overwhelmingly supports the conclusion that K.P.'s IEP and DCPS

placement were not adequate, and that Defendant did not meet its burden of establishing

otherwise at the Due Process Hearing.  At the Hearing, DCPS failed to offer any support for its

assertion that the placement was adequate, other than to proffer that the "remedy sought is

excessive and that [the parent and DCPS] should just have a new meeting [to] decide a new

placement," and DCPS did not offer any witnesses.  Conversely, Plaintiff presented witnesses

and offered support for her assertions that K.P.'s public school education and IEP were

inadequate.   Ms. Millis, the educational advocate for K.P. testified that K.P.'s regular classroom

at Backus had 23 to 28 children and her special education classes had 12 children. ( K.P.'s Tr. at

19.)  During the classroom visits, Ms. Millis noticed that "[a]t no point in time was she focused

on any academics . . . . It's all completely totally over her head and the teachers really did not

have time to work with her on an individual basis."  (K.P.'s Tr. at 20.)  Ms. Millis stated that

"[t]he teachers literally begged [her] to do something for [K.P.]" and that "they said [her

placement] was completely totally inappropriate."   (K.P.'s Tr. at 20.)   Furthermore, DCPS

reported that K.P. has an IQ of 51, almost 20 points below what is necessary to call a student

mentally retarded, but her IEP labels her as "learning disabled."  (K.P.'s Record at 120; K.P.'s Tr.

at 9.)  Finally, according to Ms. Millis, the IEP goals and objectives are meaningless; for

example, the IEP lists as a goal that K.P. will "[l]earn 1 to 12 multiplication factors mentally,"

and "write a business letter," however, K.P. works at below a kindergarten level. ( K.P.'s Record

at 124-25; K.P.'s Tr. at 22.)

Confronted with the undisputed testimony that K.P.'s teachers at Backus considered her

placement at that school to be inappropriate and coupled with the fact that the Defendant offered

no evidence at the Hearing to support the appropriateness of K.P.'s placement at Backus, this

Court finds that Backus was not an appropriate placement for K.P.  The Court further finds that

DCPS's school placement of K.P. "was not reasonably calculated to provide an educational

benefit."  *See Rowley*, 458 U.S. at 207.  According to the undisputed testimony from Ms. Millis,

K.P. has no reading skills, and works at below a kindergarten level, however, her IEP provided

that she should be in a regular education classroom for fifty percent of the time.  (K.P.'s Tr. at 19-

22.)  Moreover, the Court notes that the teachers at Backus felt the placement was inappropriate

and that the IEP goals and objectives, including "writing a business letter," were meaningless.

(K.P.'s Tr. at 20.)

## B.  Private School Placement

If a plaintiff establishes that the proposed public school placement is inappropriate, the

reviewing court must then determine whether or not the private school placement is appropriate.

*See Burlington*, 471 U.S. at 369; *Schoenbach v. District of Columbia*, 309 F. Supp. 2d 71, 83-84

(D.D.C. 2004).  The Court notes that Defendant does not dispute the appropriateness of CLE as a

private school placement, but argues that the DCPS placement was adequate.  However, the

Court has already concluded that the DCPS placement was not appropriate and therefore rejects

Defendant's argument.  Under *Burlington*, this Court finds that J.P. and K.P.'s placement at

Backus was inappropriate and violated the IDEA, and that the children's private school

placement at CLE is appropriate.  At the Due Process Hearing, Plaintiff offered sufficient

evidence to show that CLE was an appropriate placement.

## 1. J.P.

Patricia Waller, the Principal at the Center for Life Enrichment Academy, testified on

behalf of J.P. at the Due Process Hearing, stating that she had made academic and behavior

progress since April 2003 when she was transferred to the school.  (J.P.'s Tr. at 43.)  Ms. Waller

also testified that J.P. is in a small class with eight students, ages 12 to 14, that all have

disabilities similar to hers; she meets individually with a reading specialist three times a week;

and she has responded to CLE's behavior management system, and currently uses the "proper

behavior methods."  (J.P.'s Tr. at 43-45.)

### 2. K.P.

Ms. Waller testified that K.P. is a "very, very hyperactive" and "difficult to maintain" in a

classroom.  (K.P.'s Tr. at 13.)  However, at CLE K.P. is in a classroom with only seven children

and all have reading trouble like her.  (*Id.*)  Ms. Waller also testified that K.P. needs a small

classroom and that much of her instruction needs to be one on one, as is provided at CLE.

(K.P.'s Tr. at 14.)  Furthermore, at CLE, K.P. is in a reading group with only two other children

and they are all operating at the same level, she is developing social behavior, and is becoming

"very responsive to redirection from the adults in the school."  (K.P.'s Tr. at 15.)

### C. Request for Tuition Reimbursement

Under the IDEA, parents who unilaterally decide to place their child in a private school,

without consent of the local school officials, "do so at their own risk."  *Florence County Sch.

Dist. Four v. Carter*, 510 U.S. 7, 15 (1993) (quoting *Burlington*, 471 U.S. at 372).  Parents may

receive tuition reimbursement, however, if a court finds that: (1) "the public placement violated

the IDEA" and (2) "the private school placement was proper under the Act."  *Schoenbach v.

District of Columbia*, 309 F. Supp. 2d 71, 77 (D.D.C. 2004); *see Sch. Comm. of Burlington v.*

*Dep't. of Educ.*, 471 U.S. 359, 369-70 (1985).[6]  Furthermore, "[t]he court has broad discretion to

grant appropriate relief under the IDEA . . . and its standard of review under IDEA is less

deferential than that used in the traditional substantial evidence test in ordinary administrative

review cases."  *Argueta*, 355 F. Supp. 2d at 412 (citing *Sch. Comm. of Burlington v. Mass. Dept.*

*of Educ.*, 471 U.S. 359, 369 (1985)) (citations omitted).  In *Burlington*, the term "appropriate"

was interpreted to include reimbursing parents who paid for their child's private school education

in lieu of an appropriate state-provided educational setting.  *Id.*  This Court finds that the Plaintiff

has provided sufficient evidence to warrant reimbursement for the private school placement.

### 1. Failure of Parent to Engage in New IEP

Defendants contend that Plaintiff cannot receive tuition reimbursement because she

unilaterally moved her children, and did not provide them with an adequate opportunity to

change the IEP and the education.[7]  Defendants state that they were "ready, willing and able to

provide [J.P. and K.P.] with the educational program provided in her IEP and offered this as a

FAPE in a public setting."  (Defendants' First Mot. at 12 (citing *Rouse v. Wilson*, 675 F. Supp.

1012, 1019 (D. Va. 1987) (denying parents reimbursement for unilaterally choosing a private

---

[6]Defendant argues that Plaintiff violated the "stay put" provision of the IDEA, 20 U.S.C.
§ 1415(j) by moving J.P. and K.P. during the pendency of proceedings, and as a result is not
entitled to reimbursement.  However, the Supreme Court has stated that a court can award
retroactive funding if a federal court concludes both that the public placement violated IDEA and
that the private school placement was proper under the Act.  *Florence*, 510 U.S. at 15.  "Parents
who disagree with the proposed IEP are faced with a choice: go along with the IEP to the
detriment of their child if it turns out to be inappropriate or pay for what they consider to be the
appropriate placement.  For parents willing and able to make the latter choice, it would be an
empty victory to have a court tell them several years that they were right but these expenditures
could not in a proper case be reimbursed by the school officials."  *Id.* at 12 (citations omitted).

[7] The Court notes that Defendants make virtually identical arguments regarding Plaintiff's
request for tuition reimbursement for both J.P. and K.P.

school because the public school alternative was appropriate)).  Defendants further argue that the

Plaintiff's failure to participate in the production of a new IEP precluded the child's placement in

a different school and that the unilateral placement was premature.[8]  (Defendants' Second Opp'n

at 3.)

Defendants rely heavily on *Patricia P. v. Board of Education*, 203 F.3d 462 (7th Cir.

2000) in support of their contention that Plaintiff is not entitled to compensation because of her

"failure to cooperate."  (Defendants' First Reply at 1.)  This Court finds the Seventh Circuit case

not determinative.  In *Patricia P.*, the Seventh Circuit concluded that the plaintiff parent, by her

own actions, "deprived the school district of a reasonable opportunity to conduct an evaluation of

[the disabled minor]."  *Patricia P. v. Board of Education*, 203 F.3d 462, 469 (7th Cir. 2000).  In

that case, the Plaintiff did not present her son for an evaluation of his then recently diagnosed

disorder and did not give the school district an opportunity to implement an IEP; Patricia P.

removed her disabled child from the public school shortly after he was identified as disabled, and

before an IEP could be developed.  *See id.* at 464.  In this case, DCPS had almost an entire

school term to provide an appropriate education and to implement the 2002-2003 IEP for both

Plaintiff's children.[9]  Furthermore, in *Patricia P.* the plaintiff's argument for reimbursement

_____

[8]The record is unclear and incomplete as to a letter of invitation to a meeting to develop a new IEP; Plaintiff disputes receiving this letter.  (Plaintiff's First Opp'n at 1; Defendants' First Opp'n at 2.)

[9] Ms. Millis, the educational advocate for J.P. and K.P., provided uncontested testimony at the Hearing that she expressed her dissatisfaction with the children's education to the teachers and special education coordinator at Backus in the fall of 2002, and that Backus failed to make any changes by the following spring.  (J.P.'s Tr. at 18; K.P.'s Tr. at 19.)

rested solely on the allegation that the school district did not conduct an evaluation, while in this case Plaintiff's principal argument is that the education provided to both J.P. and K.P. throughout the 2002-2003 school year failed to comply with the IEP and was both inadequate and inappropriate.

The Hearing Officer accepted DCPS's arguments in his determination concluding that Plaintiff should not receive reimbursement. The HOD cited 1997 IDEA Amendments, in concluding "parents may be denied tuition reimbursement to which they otherwise would be entitled if they do not provide notice to the school district that they believe the proposed IEP does not provide FAPE" and that "[t]he objective is to prevent a parent from trying to obtain reimbursement for a private placement selected for reasons unrelated to whether the LEA has offered an appropriate program." (J.P.'s Record at 5; K.P.'s Record at 4.)  The Court does not dispute the Hearing Officer's statement of the law.  In this case, however, it is unrebutted by Defendant that the education provided to both J.P. and K.P. at Backus did not meet the approved IEPs developed for J.P. and K.P. and was not appropriate.  Plaintiff was clearly trying to remedy what was objectively inappropriate placements.  Indeed, Ms. Millis, the educational advocate, testified that she met with J.P. and K.P.'s teachers and expressed her dissatisfaction with the children's education in the fall of 2002, but that Backus failed to make any changes by the following spring; accordingly, Backus was certainly on notice that the 2002-2003 IEP was not appropriate and had ample opportunity to correct it.[10]  (J.P.'s Tr. at 18; K.P.'s Tr. at 19.) Furthermore, Plaintiff did not place her children at CLE for reasons unrelated to whether the

---

[10]The Court notes that this testimony was not contested by Defendant and no contrary testimony was offered.

DCPS placement was appropriate; the faculty at Backus school themselves stated that the public school placement was inappropriate.  (J.P.'s Record at 22, 35.)

The Court having found that (1) Plaintiff's children did not receive an appropriate education in accordance with the IDEA for most of the 2002-2003 school year; (2) that the 2002-2003 IEP had not expired at the time that Plaintiff removed her children from Backus; (3) that Backus was unable to provide the educational programs of the IEPs; (4) and that DCPS was unresponsive to Ms. Millis's numerous pleas on behalf of Plaintiff prior to the removal, finds that the placement in private school was appropriate and not "premature" as Defendant alleges.

## 2.  Notice

Defendants claim that "Plaintiff[] failed to provide sufficient notice to DCPS of [her] unilateral decision to remove [J.P. and K.P.] from the DCPS."  (Defendants' First Reply at 4.) Under the IDEA, the cost of reimbursement may be reduced or denied if: (1) "at the most recent IEP meeting that parents attended prior to removal of the child from the public schools, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency . . . including stating their concerns and their intent to enroll their child in a private school at public expense" or (2) "10 business . . . days prior to the removal of the child from the public school, the parents did not give written notice to the public agency" stating their concerns and their intent to enroll their child in a private school at public expense.  20 U.S.C. §§ 1412(a)(10)(C)(iii)(I)(aa) - (bb).

It is true that Plaintiff did not reject the 2002-2003 IEPs created for J.P. or K.P., in accordance with 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(aa), and in fact approved the programs. However, at the time Plaintiff approved the IEPs both children were attending Noyes Elementary

school and not Backus.  Additionally, Plaintiff did provide Defendants written notice of the children's removal, and thus should be able to receive reimbursement beginning ten business days after April 3, 2003 in accordance with 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(bb).[11]

The Defendants also argue that Plaintiff cannot receive reimbursement because a current IEP did not exist, and therefore Plaintiff failed to meet the statutory requirements for notice to the school system.  (Defendants' First Reply at 5.)  The Court notes that the 2002-2003 IEP had not expired at the time that the Plaintiff notified DCPS of her intention to place J.P. and K.P. in a private school.  (*See* J.P.'s Record at 30; K.P.'s Record at 120.)

The Court further notes that assuming, *arguendo*, Plaintiff failed to comply with the statutory requirements, the IDEA states that courts *may* reduce or deny reimbursement, but does not compel a court to do so.  *Schoenbach*, 309 F. Supp. 2d at 85.  Courts have found total denial of reimbursement too harsh where a parent's actions did not contribute to the inappropriateness of a child's educational plan.  *Id.* at 86.  The Court finds that Plaintiff did not contribute to the inappropriateness of the 2002-2003 IEP, and gives weight to the uncontested testimony from Ms. Millis that she tried on numerous occasions during 2002-2003 school year to persuade Backus to provide a more appropriate education.  Accordingly, this Court will not reduce or deny such reimbursement.

## D.  Request for Evaluation

Plaintiff claims that Defendants failed to provide FAPE when DCPS failed to reevaluate J.P. in accordance with 20 U.S.C. § 1414(a)(2)(A), because it did not perform a new psycho-

---

[11] The statute provides that notice must be given ten *business* days prior to removing the child; thus, Plaintiff is entitled to reimbursement beginning on April 17, 2003, and not April 13, 2003, as Plaintiff asserts.

educational evaluation from June 2, 2000 to July 2, 2003 and Plaintiff seeks an injunction ordering DCPS to perform this evaluation.  (Plaintiff's First Mot. at 9.)  Defendant did not address this claim, other than to state that Plaintiff "did not give DCPS an opportunity to develop a 2003-2004 IEP."  (Defendants' First Opp'n at 4.)  According to IDEA, in order for a state to receiving funding, "[a]ll children with disabilities residing in the State, *including children with disabilities attending private schools* . . . who are in need of special education and related services, [must be] identified, located, and evaluated."  34 C.F.R. § 300.125(a)(1)(i) (emphasis added); *Schoenbach*, 309 F. Supp. 2d at 74.  Accordingly, Defendant shall provide a new psycho-evaluation for J.P. in accordance with 20 U.S.C. § 1414(a)(2)(A), upon Plaintiff availing J.P. to DCPS for such evaluation.

### V. Conclusion

The Court finds that J.P. and K.P. have not been provided free appropriate education in accordance with IDEA at Backus Middle School.  The Court further finds that the Hearing Officers Determinations were unsupported by the Record in this case, and that Defendant shall provide reimbursement for J.P. and K.P. for their education at the private institution, the Center for Life Enrichment.

DATED: August _____ 2005                          _____
                                                   ALAN KAY
                                                   UNITED STATES MAGISTRATE JUDGE